IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REGIONS BANK, f/k/a Union Planters )
Bank, N.A., )
 )
        **Plaintiff,** )
 )
vs. ) CIVIL NO. 10-759-GPM
 )
R & D DEVELOPMENT CORPORATION, )
an Illinois Corporation, et al., )
 )
        **Defendants.** )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This case is before the Court on a motion for a default judgment and a motion for appointment of a receiver brought by Plaintiff Regions Bank ("Regions") (Doc. 19, Doc. 24). This case concerns certain indebtednesses to Regions assumed by Defendant R & D Development Corporation ("R & D"), acting through its officers and agents Defendants L. David Bridges and Richard J. Trolard. It appears from the allegations of Regions's operative complaint in this case and the documentation attached thereto that on October 21, 2005, R & D, through Bridges and Trolard, executed a promissory note agreeing to pay Regions the sum of $1,100,000, together with interest thereon, and a trust deed securing the note by granting Regions an interest in real property located at 10912 Schuetz Road, St. Louis, Missouri, 63146. In addition, Bridges entered a guaranty of the note. On November 17, 2006, R & D, through Bridges and Trolard, executed a promissory note agreeing to pay Regions the sum of $1,057,985.19, together with interest thereon, and a mortgage securing the note by granting Regions an interest in real property located at 34 Empire Drive,

Belleville, Illinois, 62221. In addition, Bridges entered a guaranty of the note. Also on November 17, 2006, R & D, through Bridges and Trolard, executed a promissory note agreeing to pay Regions the sum of $360,000, together with interest thereon, and a mortgage securing the note by granting Regions an interest in real property located at 15 Emerald Terrace, Swansea, Illinois, 62226. In addition, Bridges entered a guaranty of the note. On April 29, 2010, R & D and Regions entered a modification agreement, guaranteed by Bridges and Trolard, whereby R & D acknowledged that it was indebted to Regions in the following amounts: $956,366.15, not including attorneys' fees and expenses, in connection with the promissory note secured by the Schuetz Road property; $979,224.84, not including attorneys' fees and expenses, in connection with the promissory note secured by the Empire Road property; and $327,767.61, not including attorneys' fees and expenses, in connection with the promissory note secured by the Emerald Terrace property. In the modification agreement R & D promised to repay all of the foregoing sums.

R & D, Bridges, and Trolard ultimately defaulted on their obligations to Regions, whereupon Regions served a demand for repayment on August 17, 2010, in which Regions warned that, unless the defaults were cured, the balances due on the promissory notes at issue in this case would be accelerated. It appears that the defaults were not cured, as this action was filed on September 30, 2010. In its complaint in this case Regions asserts claims for breach of contract against R & D, Bridges, and Trolard, and asserts that it is owed: $956,988.42, together with pre-judgment and post-judgment interest, attorneys' fees, and costs, in connection with the promissory note secured by the Schuetz Road property; $977,693.60, together with pre-judgment and post-judgment interest, attorneys' fees, and costs, in connection with the promissory note secured by the Empire Road property; and $326,165.57, together with pre-judgment and post-judgment

interest, attorneys' fees, and costs, in connection with the promissory note secured by the Emerald Terrace property. It appears from the record that Bridges was served with process in this case on November 18, 2010, R & D was served on November 23, 2010, and Trolard was served on November 30, 2010. To date none of the Defendants in this case have appeared or answered the complaint. On December 29, 2010, the Clerk of Court made an entry of default in this case. Regions now requests that the Court enter a default judgment against in the amount of $2,271,927.62. Regions also requests that the Court appoint a receiver to manage and administer the Schuetz Road property, the Empire Road property, and the Emerald Terrace property. Having considered the matter carefully, the Court now rules as follows.

The Court turns first to Regions's request for a default judgment. Obtaining a default judgment entails two steps. First, the party seeking a default judgment must file a motion for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and, second, once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party. *See* Fed. R. Civ. P. 55; *Conn-Selmer, Inc. v. Apex Indus., Inc*., No. 04C0245, 2006 WL 752895, at *1 (E.D. Wis. Mar. 20, 2006). *Cf. Keesh Constr., Inc. v. United States*, No. 1:02-CV-899, 2004 WL 2536840, at *1 n.1 (S.D. Ohio Sept. 28, 2004). Rule 55 of the Federal Rules of Civil Procedure provides that the clerk may enter a judgment by default when the plaintiff's claim is for a sum certain or for a sum which can be computed with certainty and the defendant has been defaulted for failure to appear and is neither an infant nor incompetent. *See* Fed. R. Civ. P. 55(b)(1); *Palladino v. General Crushed Stone Co*., No. 96-CV-1355, 1997 WL 67792, at *1 (N.D.N.Y. Feb. 13, 1997). In all other cases, the party seeking a judgment by default must apply to the district judge presiding

in a case for entry of a default judgment. *See* Fed. R. Civ. P. 55(b)(2). Rule 55 states, in relevant part,

> A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). Thus, to procure a default judgment under Rule 55(b)(2), a party must establish the following: (1) when and against what party the default was entered; (2) identification of the pleading as to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military service and thus the Soldiers' and Sailors' Civil Relief Act of 1940, 50 App. U.S.C. § 501 *et seq.*, does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2). *See Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).

In this case Regions has not complied with the technical requirements for procuring a default judgment by, for example, identifying the pleading as to which the Clerk's default was entered, demonstrating a reasonable probability that Bridges and Trolard are not incompetent or in military service, and so forth. *See Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 815 & n.5 (E.D. Tenn. 2006) (finding the requirements for entry of a default judgment satisfied by a declaration of the plaintiffs' that: (1) identified when and against what party the default was entered; (2) attached a copy of the pleading to which default was entered, the plaintiffs' complaint; (3) stated

that the plaintiffs had no reason to believe the defendant is either an infant or incompetent; and (4) stated that after searching various military or military locator databases, the plaintiffs had discovered no evidence the defendant was serving in the military); *Elektra Entm't Group, Inc. v. Bryant*, No. CV 03-6381GAF(JTLX), 2004 WL 783123, at *3 (C.D. Cal. Feb. 13, 2004) (the procedural requirements for entry of a default judgment were met where the plaintiffs "served Defendant with the summons and complaint; (2) caused the clerk to enter the default against Defendant for failure to answer; (3) stated that Defendant is not a minor or incompetent lacking adequate representation; (4) stated that Defendant is not in the military or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940; (5) given notice of this application for default judgment; (6) and notified Defendant as to the amount requested.") (citations omitted). These are technical points, the Court recognizes, but the Court believes it is entitled to insist on strict compliance with the requirements for entry of a default judgment, given that a default judgment is a disfavored remedy, particularly in a case involving, as here, a substantial amount of money. *See Pikofsky v. Jem Oil*, 607 F. Supp. 727, 734 (E.D. Wis. 1985) (citing *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 398, 415-16 (E.D. Pa. 1981)) ("[D]efault judgments are not looked upon favorably, particularly when significant damages may be involved[.]").

The Court notes some additional problems with Regions's request for a default judgment. Here, according to the allegations of Regions's complaint R & D, Bridges and Troland owe Regions $2,260,847.59, together with pre-judgment and post-judgment interest, attorneys' fees, and costs. However, in the instant motion for a default judgment, which is supported by the affidavit of Darrell Westbrook, Regions's vice-president, Regions demands $2,271,927.62, which Regions states is the amount, exclusive of attorneys' fees and costs, owed by R & D, Bridges, and Troland to

Regions as of December 9, 2010. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Thus, in general, a default judgment is limited to amount demanded in a complaint. *See Neff v. Western Coop. Hatcheries*, 241 F.2d 357, 363 (10th Cir. 1957); *Trans World Airlines, Inc. v. Hughes*, 32 F.R.D. 604, 607-08 (S.D.N.Y. 1963). Also, the Court does not find Regions's itemization of its claimed damages to be satisfactory. "As a general rule, a 'default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint.'" *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (quoting *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982)) (brackets omitted). Thus, "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Id*. However, although upon the entry of default, the well-pleaded allegations of a complaint relating to liability are taken as true, allegations regarding the amount of damages must be proven because "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Here, the Court would like to know: what portion of the damages claimed in Regions's complaint consists of principal and what portion of the damages consists of interest; assuming, as seems likely, that some portion of the claimed damages consists of interest, at what rate or rates such interest was calculated; and whether the rate or rate at which the interest was calculated comports with the interest rates fixed in the instruments of indebtedness at issue in this case. Regions's motion for a default judgment will be denied without prejudice to bringing a renewed request for a default judgment that remedies the defects in the instant motion identified in this Order.

The Court turns next to Regions's request for appointment of a receiver to manage and administer the Schuetz Road property, the Empire Road property, and the Emerald Terrace property. Contrary to what Regions seems to think, the issue of appointment of a receiver in this case is governed by federal law, not state law. Pursuant to Rule 66 of the Federal Rules of Civil Procedure, "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). *See also Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009) ("[F]ederal law governs the issue of whether to appoint a receiver in a diversity action."); *National P'ship Inv. Corp. v. National Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998) ("We therefore hold that federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction."). "Federal courts have an inherent equitable power to appoint a receiver[.]" *In re McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994). The authority to appoint an equitable receiver is part of a federal court's "traditional, common law powers of equity." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). A receiver is an officer of the court and does not owe allegiance to the one who sought his or her appointment, but rather acts as a fiduciary on behalf of both parties. *See Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). Appointment of a receiver is an extraordinary remedy and a court should exercise its discretion to appoint a receiver with "care and caution." *Connolly v. Gishwiller*, 162 F.2d 428, 435 (7th Cir. 1947). *See also Aviation Supply Corp.*, 999 F.2d at 316 ("A receiver is an extraordinary equitable remedy that is only justified in extreme situations."). Factors to be considered in the decision to appoint a receiver include the

following: (1) fraudulent conduct on the part of a defendant; (2) whether there is imminent danger of property being lost, concealed, injured, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) the probability that harm to a plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and (5) the plaintiff's probable success in the action and the possibility of irreparable injury to his or her interests in the property. *See Consolidated Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326-27 (1st Cir. 1988).

Because Regions has not made a showing that any of the relevant factors are satisfied in this case, the Court will deny Regions's request for appointment of a receiver without prejudice to renewing the request if Regions thinks it can adduce evidence sufficient to satisfy the demanding standard for such an appointment. The Court recognizes that appointment of a receiver may be appropriate in a case involving, as here, debts secured by property:

> There are a number of well-established contexts in which a receivership is thought to be appropriate. Secured creditors, lienholders, and mortgagees, for example, clearly have an interest in the property on which they have a security interest that may provide a basis for convincing the court to appoint a receiver ending a foreclosure suit or any other action to enforce one or more outstanding liens.

12 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2983 (2d ed. 1987 & Supp. 2010) (collecting cases). *See also View Crest Garden Apartments, Inc. v. United States*, 281 F.2d 844, 847-48 (9th Cir. 1960) ("[I]n an action brought to foreclose a mortgage . . . a District Court is empowered, under the terms of the mortgage and on application by the holder thereof, to appoint a receiver to collect the rents, issues and profits during the pendency of the foreclosure action, at least when he is satisfied the security is inadequate, or its adequacy is substantially doubtful, and the mortgagor is insolvent or of doubtful financial

standing."); *Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n*, 787 F. Supp. 250, 253 (D.D.C. 1992) ("Creditors with a security interest in real property have a well-established interest in the property sufficient to support the appointment of a receiver."); *New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 292-93 (E.D. Cal. 1991) (a creditor was entitled to appointment of a receiver to manage property secured by a deed of trust which provided for a receiver, where the adequacy of that security for the loan was substantially doubtful, the financial strength of the mortgagor was doubtful, there was a danger that the property might be diminished in value, and the mortgagor was diverting rents from the repayment of the loan). *Cf. Zinke-Smith, Inc. v. Marlowe*, 323 F. Supp. 1151, 1151 (D.V.I. 1971) (in a suit seeking the appointment of a receiver for the defendant corporation to collect and conserve its assets "for the benefit of the creditors of the defendant corporation and the general public," holding that a corporate receiver would not be appointed absent a showing that the property of the corporation was in grave and imminent danger of dissipation: "[A] receiver is, like an injunction, an extraordinary remedy, and ought never be made except in cases of necessity, and upon a clear and satisfactory showing that the emergency exists, in order to protect the interests of the plaintiff in the property involved . . . . The passage of time has in no way diminished the soundness nor the vitality of the foregoing principles[.]"). The fact that R & D, Bridges, and Trolard have defaulted on the large debts that they owe Regions certainly gives rise to an inference that R & D, Bridges, and Trolard are insolvent or of doubtful financial standing. Also, it appears that R & D, Bridges, and Trolard have stopped paying real estate taxes on the property securing the debts at issue in this case, suggesting a danger of waste. However, bearing in mind the exacting standard for appointing a receiver, the Court will deny Regions's request for a receiver until such time as Regions may show that standard is met.

To conclude, Regions's motion for appointment of a receiver (Doc. 19) and motion for a default judgment (Doc. 24) are **DENIED without prejudice** to a renewed request by Regions for appointment of a receiver and for a default judgment that corrects the defects in Regions's current motions outlined in this Order.

**IT IS SO ORDERED.**

DATED:  May 31, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge